**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

| | | |
|---|---|---|
| **PATRICIA STAGGS** *et al.* | ) | |
| | ) | **Case No. 3:24-cv-00010** |
| **v.** | ) | **Chief Judge Campbell** |
| | ) | **Magistrate Judge Holmes** |
| **PANDA EXPRESS, INC.** *et al.* | ) | |

## MEMORANDUM ORDER

Pending before the Court is Plaintiffs Patricia Staggs and Charles Staggs and Defendant Panda Express, Inc.'s joint motion for discovery conference (Docket No. 44), which is **DENIED** to the extent the Court does not find it necessary to conduct a discovery conference to resolve the discovery issues raised by the parties in their discovery dispute statement (Docket No. 44-1).

## I.    BACKGROUND

Plaintiffs – a wife and husband – filed their complaint against Panda Express and another defendant, RB Rivergate, LLC, alleging damages for injuries sustained after Plaintiff Patricia Staggs "was caused to trip and fall in a hole located directly in front of the front doors of Defendant(s)' premises." (Docket No. 1-1 at ¶ 7.) Plaintiffs allege that the hole "represented an unreasonably dangerous hazard" that Defendants "failed to prevent, repair, correct, warn about, or otherwise make safe to customers and other invitees on the premises." (*Id.*) Plaintiffs also assert that Defendants' "negligence, gross negligence, recklessness, and wanton disregard" was the "sole proximate cause" of their injuries. (*Id.* at ¶ 15.)

Plaintiffs and Panda Express now jointly move the Court to set a hearing to resolve four discovery issues: (1) the scope of Plaintiffs' Rule 30(b)(6) notice of deposition; (2) the scope of Plaintiffs' notices of deposition to two Panda Express employees; (3) the sufficiency of Panda Express's responses to Plaintiffs' interrogatories and requests for production; and (4) the

sufficiency of Plaintiffs' responses to Panda Express's interrogatories and requests for production. (Docket No. 44-1.) As detailed below, the Court finds that a hearing is not necessary and resolves the parties' discovery disputes as follows.

## II.     LEGAL STANDARDS

Generally, parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case … ." Fed. R. Civ. P. 26(b)(1).[1] Rule 26 sanctions a broad search and the information sought by a party need not be admissible to be discoverable. *Id*. Further, the former provision for discovery of relevant but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence" was deleted in the 2015 amendments to Rule 26 because of the incorrect reliance on that phrase to resist discovery. Instead, the concept of reasonably calculated to lead to the discovery of admissible evidence was replaced by the direct statement that information within the scope of relevancy "need not be admissible in evidence to be discoverable."

However, the scope of discovery has "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). It is also "well established that the scope of discovery is within the sound discretion of the trial court." *In re Flint Water Cases*, 960 F.3d 820, 826 (6th Cir. 2020) (quoting *Criss v. City of Kent*, 867 F.2d 259, 261 (6th Cir. 1988)); *see also Crawford-El v. Britton,* 523 U.S. 574, 598–99 (1998) (trial court is afforded broad discretion to control and dictate the sequence of discovery); *Marie v. American Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (district courts have broad discretion to manage the discovery process and control their dockets) (internal citations omitted); *McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-cv-00033,

---

[1] Unless otherwise noted, all references are to the Federal Rules of Civil Procedure.

2

2019 WL 5957004, *1 (M.D. Tenn. Oct. 29, 2019) (ultimately, the scope of discovery is within the broad discretion of the trial court) (internal citations omitted).[2]

The trial court is directed to prevent discovery that falls outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Discovery may be denied if: (i) it is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the requesting party has already had ample opportunity to obtain it; or, (iii) it falls outside the scope of discovery set forth in Rule 26(b)(1). *Id.* Generally, the party seeking discovery is obliged to demonstrate relevance. When the information sought appears to be relevant, "the burden shifts to the party resisting discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case," *Allgood v Baptist Mem'l Med. Grp., Inc.*, No. 19-2323-JTF-tmp, 2020 WL 86455, *1 (W.D. Tenn. Jan. 7, 2020) (citation omitted), or to establish that the information either is not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm. *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015). Otherwise, the party opposing production generally bears the burden of establishing that the discovery sought falls beyond the purview of Rule 26. *See Shropshire v. Laidlaw Transit, Inc.*, No. 06–10682, 2006 WL 6323288, *2 (E.D. Mich. Aug. 1, 2006) ("The party who resists discovery has the burden to show discovery should not be allowed and has the burden of clarifying, explaining, and supporting its objections.")

---

[2] That sentiment has continued throughout revisions to Rule 26 including the most recent ones. The Court also possesses inherent authority to manage litigation. As noted by the First Circuit, "as lawyers became more adept in utilizing the liberalized rules, the bench began to use its inherent powers to take a more active, hands-on approach to the management of pending litigation." *In re San Juan DuPont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1011 (1st Cir. 1988) (cleaned up). "The judiciary is free, within reason, to exercise this inherent judicial power in flexible pragmatic ways." *Id.* at 1011 n.2 (quoting *HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F. 2d 908, 916 (1st Cir. 1988)) (cleaned up).

3

Although a party should not be denied access to information necessary to prove their contentions, neither should they be "permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted). "A court must balance the right to discovery with the need to prevent fishing expeditions." *Id*. at 236–37 (internal quotation omitted) (citation omitted). Objections to broad discovery that requests information without temporal limits that are confined by the specific litigation or that requests such things as identification of all communications or persons with whom communications occurred related to a general topic will be more likely to be sustained.

A party objecting to discovery must state with particularity the grounds for objection and why the request cannot be responded to as is. Boilerplate objections, such as the discovery requests are "overly broad," are "vague," are "not proportional to the needs of the case," are "unduly and substantially burdensome," or "are not likely to lead to admissible information" are "legally meaningless and amount to a waiver of an objection." *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F.Supp.3d 626, 637 (E.D. Mich. 2021) (internal citation omitted); *see also Davis v. American Highwall Mining, LLC*, 570 F.Supp.3d 491, 495 (E.D. Ky. 2020) (collecting several authorities in support). Boilerplate objections and blanket refusals to search for relevant documents will not be deemed acceptable responses to discovery requests.

### III.   DISCOVERY DISPUTES AT ISSUE

As an initial matter, the parties' joint discovery dispute statement largely muddled rather than clarified the issues. The discovery issues were presented in a disorganized and confusing fashion, which caused the Court to expend unnecessary time and resources. For example, the parties failed to clearly set forth precisely which of Plaintiffs' discovery requests or Rule 30(b)(6)

4

topics were in dispute, which caused the Court to spend much more time reviewing those requests and topics than was necessary.

Further, and more importantly, the Court finds that many of the issues in the joint discovery dispute statement are ones that the parties should have been able to resolve without Court intervention. For example, the parties could have worked to together to determine how to define the "area of the incident" or to agree on how many years' worth of employee information should be produced. These are not particularly complicated issues, and it verges on frivolousness for the parties to bring these types of disputes to the Court's attention. Further, it appears that the parties may not have had a final in-person meet and confer on some of the issues, but rather were still in the process of sending letters back and forth about the discovery issues when they filed this motion. **To be clear, the Court will not consider any other discovery disputes if the parties' efforts at resolution did not include the mandatory in-person meeting among lead counsel as a final effort to resolve the dispute prior to seeking judicial intervention. Rather, the parties will be directed to conduct the mandatory in-person meeting, with all attended consequences of any resulting delay, including the expiration of the discovery deadline.**

The Court is especially troubled by correspondence between counsel that indicates that the parties were reticent to share their portions of the joint discovery dispute statement prior to filing. (Docket No. 44-5.) This apprehension appears to be based on a fear that the other party might change its position at the last moment. However, the reason the Court requires parties to meet and confer in person and then file a joint discovery dispute statement is precisely so that the parties will share their positions and make a concerted, good faith effort at resolution. Once the parties have their positions clarified in writing, the Court hopes that the parties will review those positions and continue to work towards resolution. In other words, the parties should be sharing their

5

positions at every turn so that the Court can be assured that it is being presented only with those issues that the parties truly cannot solve without the Court's intervention. Doing otherwise is the ultimate in unreasonably prolonging and unnecessarily increasing the cost of resolution of the dispute. Plaintiffs and Panda Express's apparent unwillingness to work together has resulted in unnecessary time and expense for the parties and a waste of judicial resources for the Court.

Nevertheless – but without any excuse of the parties' conduct – and primarily in the interests of timing, the Court will discuss the parties' four issues: (1) the scope of Plaintiffs' Rule 30(b)(6) notice of deposition to Panda Express; (2) the scope of Plaintiffs' notices of deposition to two Panda Express employees; (3) the sufficiency of Panda Express's responses to Plaintiffs' interrogatories and requests for production; and (4) the sufficiency of Plaintiffs' responses to Panda Express's interrogatories and requests for production. (Docket No. 44-1.) The Court will resolve these issues to the extent possible, but the parties are **ORDERED** to meet and confer over several of the issues **AS DIRECTED BELOW**.

1. **Plaintiffs' Rule 30(b)(6) Deposition Topics**

Plaintiffs' amended notice of Rule 30(b)(6) deposition to Panda Express, which was served on August 26, 2024, contains 71 topics. (Docket No. 44-11.)[3] The parties state that they have come to an agreement concerning many of these topics, but several remain in dispute. However, in their

---

[3] The Court is not certain why it took the parties nearly six weeks to bring this dispute over the Rule 30(b)(6) notice to the Court's attention, especially considering that the deadline to complete discovery is in less than one month, on October 31, 2024. (Docket No. 39 at 1.)

Further, the version of the Rule 30(b)(6) deposition notice that was filed appears to have been scanned and is not text searchable. (Docket No. 44-11.) The notice contains green and orange highlighting that makes it difficult to read. The parties are advised to file more legible copies of documents in the future.

joint discovery dispute statement, the parties do not agree about how to categorize these topics, and they do not discuss the same topics.[4]

In the joint statement, Plaintiffs reference Topics Nos. 8–9, 11–18, 21–22, 24, 28, 30–32, 38, 40, and state that the parties resolved issues related to Topics Nos. 25–27, 36, and 52. (Docket No. 44-1 at 3–8.) However, Panda Express references Topics Nos. 11–18, 21–28, 30–31, 36, 38, 40, and 52. (*Id.* at 21–23.) In other words, both parties address Topics Nos. 11–18, 21–22, 24, 28, 30–31, 38, and 40, but only Plaintiffs address Topics Nos. 8–9 and 32, and only Panda Express addresses Topic No. 23.

The parties attempted to categorize the topics by issue, but differed here, too. Plaintiffs referenced three issues: "(1) policies and procedures, (2) risk management, inspection and curing the defect, and (3) training, instruction and supervision" (*id.* at 3), and Panda Express referenced four issues: (1) policies and procedures, (2) employees, (3) financial information related to maintenance, and (4) email servers (*id.* at 22–23).

The Court is not able to sort through the parties' muddled arguments on this issue because the discovery dispute statement is unorganized and unhelpful. Accordingly, the parties are ordered to **MEET AND CONFER IN PERSON TO DISCUSS THIS ISSUE**. During this meet and confer, the parties must work together to resolve the substance of the issues regarding the Rule 30(b)(6) topics. For any issues that the parties cannot resolve, they must prepare and file a supplemental joint discovery dispute statement that clearly states which Rule 30(b)(6) topics remain in dispute and what the issues are with respect to those topics. In other words, the supplemental joint discovery dispute statement must be organized by issue and must clearly

---

[4] This is another inevitable consequence of the parties' abject failure to coordinate even the most basic obligation of preparation of a joint discovery dispute statement.

7

identify which Rule 30(b)(6) topics fall under that issue. The statement must clearly set forth each party's position on each issue with "supporting facts and legal authorities" (Docket No. 17 at ¶ G) and must be organized in a manner that is easy for the Court to review. The supplemental joint discovery dispute statement must also be accompanied by a separately filed joint motion for discovery conference.

**2.** **Plaintiffs' Notices of Deposition to David Rodriguez and Andrew Salcido**

Plaintiffs served Panda Express with notices of deposition for David Rodriguez and Andrew Salcido on August 9, 2024 setting those depositions to take place on September 19, 2024. (Docket No. 44-7.) Plaintiffs state that Panda Express "objected" to the depositions. (Docket No. 44-1 at 8.) The Court presumes that neither Mr. Rodriguez nor Mr. Salcido have been deposed.

In support of their position, Plaintiffs assert that both potential deponents have relevant information. Mr. Rodriguez is purportedly the "Regional Manager" of the Nashville Metropolitan area for Panda Express and Plaintiffs believe he has information regarding the fall at issue and Panda Express's policies and procedures. (*Id.*) Mr. Salcido is purportedly a "Claims Manager" for Panda Express and Plaintiffs believe he has information regarding "the underlying facts relayed by witnesses to this event," certain reports, and the investigation "as to why the hole in the Defendant's parking lot was not repaired prior to Plaintiff Patricia Staggs's fall."[5] (*Id* at 9.)

In response, Panda Express states that neither potential deponent was identified by it as someone "likely to have discoverable information that Panda Express may use to support its claims

_____

[5] To support their position that Mr. Salcido should be deposed, Plaintiffs refer to deposition testimony from Panda Express General Manager Joylen Yetsick. (Docket No. 44-1 at 9–10.) However, Plaintiffs did not file a transcript of the deposition because it is "still being prepared." (*Id.* at 10 n.3.) Instead, Plaintiffs referred the Court to a link to a DropBox website that purportedly has a video of Ms. Yetsick's deposition. (*Id.*) The Court did not review this link or watch any video, nor does it have any intention of doing so.

8

or defenses." (*Id.* at 20–21.) Accordingly, it argues that deposing Mr. Rodriguez and Mr. Salcido would be "beyond the permissible scope of discovery." (*Id.*) Panda Express also asserts that Plaintiffs are already deposing the manager of the location at issue and employees working on the day of the incident, so deposing Mr. Rodriguez and Mr. Salcido would be duplicative. (*Id.*) In addition, Panda Express contends that Mr. Rodriguez is no longer employed by Panda Express and that his deposition would not be "relevant or proportional" to the needs of the case.[6] (*Id.* at 20.) As for Mr. Salcido, Panda Express contends that he has served as its counsel's primary client contact and that his knowledge of the case comes exclusively from counsel. (*Id.* at 21.) Accordingly, Panda Express argues that deposing Mr. Salcido would raise "significant attorney-client privilege and work product concerns." (*Id.*)

Notably, neither Plaintiffs nor Panda Express provide the Court with any relevant legal authority, including case law, to support their positions with respect to these depositions. In addition, neither party explicitly asks the Court to take any specific action with respect to these deposition notices, except, the Court supposes, to generally find the notices permissible or not.

The Court finds that, considering the broad scope of Rule 26, Plaintiffs, as the parties seeking discovery, have demonstrated that the information sought through the depositions of Mr. Rodriguez and Mr. Salcido appears to be relevant. Both individuals appear likely to have information regarding Panda Express's policies and procedures generally, or about the site of the incident.

Panda Express, as the party resisting discovery, has not shown why these depositions are not proportional to the needs of the case, are not relevant, are unduly burdensome, or are harmful.

---

[6] Neither party addressed the fact that Mr. Rodriguez may no longer be employed by Panda Express and whether the deposition notice is enforceable.

In short, Panda Express has not presented any compelling reason to find that the deposition notices to Mr. Rodriguez and Mr. Salcido fall outside the scope of Rule 26(b)(1). Plaintiffs are not limited to take discovery from only those persons identified by Panda Express as having information about the litigation. As set forth above, relevance for purposes of discovery is broad. Panda Express cannot unilaterally determine who has relevant information.

With respect to Mr. Salcido, Panda Express has not presented the Court with any applicable case law to show that deponents who have been provided information by counsel are not able to be deposed. In short, Panda Express has not provided the Court with any compelling reasons to prevent Plaintiffs from deposing Mr. Salcido. Panda Express may raise objections based on attorney-client privilege or work product privilege during Mr. Salcido's deposition but is cautioned to do so only if foundationally proper. For instance, underlying facts and circumstances of the litigation are generally not protected by either attorney-client privilege or as work-product.

Further, the work product doctrine is not a privilege but a procedural rule of federal law that allows legal counsel to "assemble information, sift what [he or she] considers to be the relevant from the irrelevant facts, prepare [his or her] legal theories and plan [his or her] strategy without undue and needless interference." *Id.* (quoting *In re Columbia/HCA Healthcare Corp. Billing Practices,* 293 F.3d 289, 294 (6th Cir. 2002). Specifically, it protects an attorney's "trial preparation materials" from discovery by another party, which includes: (1) "documents and tangible things" that are (2) "prepared in anticipation of litigation or for trial" (3) "by or for another party or its representative." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (quoting Fed. R. Civ. P. 26(b)(3)(A)).[7]  If the testimony of a witness will not reveal any mental

---

[7] If the party seeking discovery first establishes that the materials sought are relevant, the party opposing production must demonstrate that the materials were prepared "in anticipation of litigation." *Guardsmark, Inc. v. Blue Cross & Blue Shield of Tennessee*, 206 F.R.D. 202, 206-07

impressions, opinions, or legal theories, it is not shielded from disclosure under work product immunity. *Stryker Corp. v. Ridgeway*, No. 1:13-cv-1066, 2015 WL 4425947, at \*3 (W.D. Mich. July 20, 2015). Further, the work product doctrine does not protect the discovery of underlying facts, "including facts concerning the creation of work product or the facts contained within the work product." *McNeil v. Mount Carmel Health System*, Case No. 2:20-cv-258, 2021 WL 5235103, at \*3 (S.D. Ohio Nov. 10, 2021).

For these reasons and based upon the limited arguments and lack of legal authority presented by the parties, the Court finds that the deposition notices to Mr. Rodriguez and Mr. Salcido are proper.[8]

**3.     Panda Express's Responses to Plaintiffs' Interrogatories and Requests for Production**

Plaintiffs contend that Panda Express has failed to sufficiently respond to their written discovery requests. Plaintiffs identify three overarching issues: (1) Panda Express's objections to the term "area of the incident"; (2) Panda Express's objections on the basis or relevance and proportionality; and (3) Panda Express's objections to the production of policies and procedures.

Notably, Plaintiffs indicate that they sent a deficiency letter to Panda Express requesting that it correct certain deficiencies in its responses. (Docket No. 44-5.) Plaintiffs then state, "As [of] the time of this filing [of the instant joint motion for discovery conference (Docket No. 44)], no

---

(W.D. Tenn. 2002). If the opposing party meets this burden, the party seeking discovery must show that it has substantial need of the materials and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *In re OM Sec. Litig.*, 226 F.R.D. 579, 584 (N.D. Ohio 2005). Even if this burden is met, however, the material will still be protected from disclosure if the opposing party demonstrates that the materials in question represent "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation." *Id*.

[8] The Court reminds Plaintiffs that they are limited to ten (10) depositions unless they obtain leave of court to take more. Fed. R. Civ. P. 30(a)(2).

response has been received, although Plaintiffs are aware the ten-day period has not expired. However, if Defendant still fails to respond to these deficiencies, the disputes will need to be heard by the Court." (Docket No. 44-1 at 11.) In their motion, the parties state that they "have conducted a telephonic and in-person meetings and made a good faith effort to resolve the current discovery disputes." (Docket No. 44 at 1.) However, the Court does not see how this statement could be accurate if the parties were still exchanging deficiency letters and awaiting responses with respect to the very discovery disputes that they have put in front of the Court to resolve. The Court is not certain why the parties filed this joint motion for discovery conference when they had not yet finalized their discussions over the discovery at issue.

Accordingly, the parties are ordered to **MEET AND CONFER IN PERSON TO DISCUSS THIS ISSUE**, that is, the deficiencies alleged by Plaintiffs in Panda Express's written responses to Plaintiffs' discovery requests. During this meet and confer, the parties must work together to resolve the issues identified in their joint discovery dispute statement. For any issues that the parties cannot resolve, they must prepare and file a supplemental joint discovery dispute statement that clearly states which discovery requests remain in dispute and what the issues are with respect to those requests. In other words, the supplemental joint discovery dispute statement must be organized by issue and must clearly identify which discovery requests fall under that issue. The statement must clearly set forth each party's position on each issue with "supporting facts and legal authorities" (Docket No. 17 at ¶ G) and must be organized in a manner that is easy for the Court to review. The supplemental joint discovery dispute statement must also be accompanied by a separately filed joint motion for discovery conference.

The Court has nevertheless reviewed the parties' positions on Panda Express's responses to Plaintiffs' discovery requests and provides the following guidance and orders:

### i. "Area of the Incident"

Some of Plaintiffs' discovery requests reference the "area of the incident at issue in this lawsuit." (Docket No. 44-2 at 5.) Plaintiffs contend that Panda Express has objected to these requests on the basis that this phrase is "vague" because it is "not specifically defined." (Docket No. 44-1 at 11–12.) Plaintiffs assert that both parties "know full well, and have since [Panda Express]'s Initial Disclosure on April 5, 2024, the exact location of the incident at issue as it is on video which Defendant provided." (*Id.* at 12.)[9]

In response, Panda Express states that it provided information in response to two of Plaintiffs' requests, despite its objection that the term "area of the incident" is vague. (*Id.* at 23–24.) Panda Express argues that a third request seeks information for "the premises as [a] whole." (*Id.* at 24.) In other words, Panda Express does not argue that its objection on the basis of vagueness is proper, only that it provided information despite objecting.

Neither party provides the Court with legal authority to support their positions, and neither party sets forth what remedy they would like the Court to impose. Nevertheless, the Court finds that this controversy between the parties is not one that is properly before the Court at this stage. There is no indication that the parties attempted to confer over this phrase and define it for themselves. Counsel for the parties are perfectly capable of sitting down and agreeing on what "area of the incident at issue in this lawsuit" encompasses. In fact, the parties are in a much better position than the Court to decide what this phrase means. It is quite difficult for the Court to

---

[9] Neither party identified which discovery requests are at issue. From the Court's review, it appears that Interrogatories Nos. 15, 17, 23–25 and Requests for Production Nos. 13–15 include the phrase "area of the incident at issue in this lawsuit." (Docket No. 44-2.)

understand how and why the parties could not come to an agreement on this term and instead thought that it would be an appropriate use of the Court's resources to make such a determination.

Further, as set forth above, boilerplate objections, like the one Panda Express has made that the phrase at issue is "vague," are "legally meaningless and amount to a waiver of an objection." *Waskul*, 569 F.Supp.3d at 637. These sort of objections are not acceptable responses to discovery requests.

Accordingly, the parties are ordered to **MEET AND CONFER IN PERSON WITH RESPECT TO THIS ISSUE**. During this meet and confer, the parties must work together to come to an agreement about what the "area of the incident at issue in this lawsuit" means. Panda Express must then supplement any and all of its responses to Plaintiffs' discovery requests in which it objects to the use of phrase "area of the incident at issue in this lawsuit" as vague.[10] These supplemental responses must contain responses that are based on the agreement that the parties reach regarding the meaning of "area of the incident at issue in this lawsuit." These supplemental responses must not contain boilerplate objections that the term "area of the incident at issue in this lawsuit" is vague because the parties will have agreed on what this term means.

ii.     **Objections on the Basis or Relevance and Proportionality**

Plaintiffs assert that Panda Express has objected to several discovery requests on the basis that the information sought is "not relevant or proportional to the needs of the case." (Docket No. 44-1 at 12.) Plaintiffs refer to Panda Express's response to several discovery requests: Interrogatories Nos. 7, 11, 15–19 and Requests for Production Nos. 3, 10–12, 14, 17. (Docket Nos.

---

[10] This includes but is not limited to Plaintiffs' Interrogatories Nos. 15, 17, 23–25 and Requests for Production Nos. 13–15

14

44-2, 44-4.) However, some, but not all, of these responses include an objection based on relevance or proportionality.

In response, Panda Express argues that it has provided responsive information and documents, but that many of Plaintiffs' requests seek information that "goes beyond what is relevant and proportional to the needs of the case." (Docket No. 44-2 at 24.) For example, Panda Express contends that Plaintiffs' requests for (i) "surveillance footage for four hours before and after Mrs. Staggs' fall, (ii) all falls at the business premises (including falls occurring after Plaintiffs' incident), (iii) employee personnel files, (iv) all policies and procedures in effect on the date of the incident that applied to the business premises, and (v) exact conversations that occurred over a year ago" seek the production of information that is not proportional to the needs of the case. (Docket No. 44-2 at 25.)

As set forth above, it is not clear to the Court if the parties have met in person to confer over each discovery request that is at issue. Accordingly, the parties are ordered to **MEET AND CONFER IN PERSON WITH RESPECT TO THIS ISSUE**. During this meet and confer, the parties must go through each request that is in dispute and must discuss the following: (1) what information or documents Plaintiffs contend should be produced; (2) the reasons why Panda Express thinks that information or those documents need not be produced; and (3) whether the parties can come to a resolution over the scope of production for each request. If the parties are not able to resolve all of their disputes, they must prepare and file a supplemental joint discovery dispute statement following the instructions set forth above. The supplemental joint discovery dispute statement must also be accompanied by a separately filed joint motion for discovery conference.

### iii.    Policies and Procedures

Plaintiffs want Panda Express to produce certain policies and procedures, but Panda Express has objected. This issue appears to center solely on Panda Express's response to Plaintiffs' Request for Production No. 11:

> RFP No. 11:    Please produce all policies, procedures, and processes in effect on the date of the incident at issue in this lawsuit that applied to the premises at which the incident occurred.
>
> Response:    Objection. This request is overly burdensome and asks for information not relevant or proportional to the needs of the case.

(Docket No. 44-2 at 14.) In a letter to Panda Express, Plaintiffs stated they were willing to "limit" this request to "policies, procedures, and processes" that relate to "inspection of the premises, incident reporting, warning customers, maintenance and repairs of the exterior (including parking lot and walkways)." (Docket No. 44-5 at 6.)

Plaintiffs contend that their request seeks relevant policies and procedures regarding Panda Express's training and supervision of its employees and its inspection and maintenance of the premises. (Docket No. 44-1 at 15.) In support of their position, Plaintiffs cite to *Beach v. Costco Wholesale Corp.*, No. 5:18-cv-00092, 2019 WL 1495296, (W.D. Va. Apr. 4, 2019), a case in which the court found that, considering the "liberal construction afforded to Rule 26," a defendant's policies and procedures "utilized to maintain a safe premises" were relevant to a plaintiff's allegations that she was "injured on those premises." *Id.* at *3. Nevertheless, the *Beach* court limited the production in both time and scope. The defendant was ordered to produce only those policies and procedures that were in place at the time of the alleged injury and that related to the area where the injury occurred. *Id.*

In response, Panda Express argues that it would be unduly burdensome to produce *all* policies and procedures. (Docket No. 44-1 at 25.) It does not acknowledge that Plaintiffs offered

16

via letter to narrow the scope of which policies and procedures they requested. This is further evidence that the parties appear to not have explicitly discussed this request *in person* prior to filing their discovery dispute statement. Further, Panda Express does not refute the holding in *Beach* that policies and procedures are discoverable, but asks that, if the Court does order Panda Express to produce policies and procedures, it only be required to produce those documents "applicable to the specific are [where] Mrs. Staggs fell." (*Id.* at 26.)[11]

Once again, this is a dispute that need not be in front of the Court. The two parties were capable of discussing the scope of production in response to this request for production. Plaintiffs expressed their willingness to narrow the scope of their request via letter. (Docket No. 44-5 at 6.) The Court cannot discern whether Panda Express responded to this concession. Nevertheless, this is a matter that the two parties could have resolved had they discussed this issue specifically.

Further, as set forth above, boilerplate objections, like the one made by Panda Express that this Request for Production No. 11 is "overly burdensome and asks for information not relevant or proportional to the needs of the case," is "legally meaningless and amounts to a waiver of an objection." *Waskul*, 569 F.Supp.3d at 637. This sort of objection is not an acceptable response to a discovery request.

The Court agrees with Plaintiffs that the information sought in Request for Production No. 11 is largely relevant, but it also agrees with Panda Express that the request is overly broad and seeks information and documents that may not be proportional to the needs of the case.

---

[11] The Court finds this request especially ironic given the dispute discussed above over what is meant by "area of the incident at issue in this lawsuit." That Panda Express has the audacity to request that it only be required to produce those documents applicable to the specific are where Mrs. Staggs fell, even while disputing the definition of that area comes precipitously close to frivolousness.

17

Accordingly, to resolve this dispute, the Court will revise Request for Production No. 11 as follows:

> Produce all policies, procedures, and processes that were in effect on May 25, 2023, the date of the incident at issue in the lawsuit, and that relate to: (1) inspection of the "walkway/parking lot" where Plaintiff Patricia Staggs alleged she fell; (2) maintenance and repairs of the "walkway/parking lot" where Plaintiff Patricia Staggs alleged she fell; (3) incident reporting concerning the premises at the Panda Express restaurant located at 2155 Gallatin Pike N, Madison, TN 37115; and (4) safety warnings to customers concerning the premises at the Panda Express restaurant located at 2155 Gallatin Pike N, Madison, TN 37115.

The Court agrees with the approach taken by the *Beach* court that, considering the "liberal construction afforded to Rule 26," Panda Express's policies and procedures regarding inspection, maintenance and repairs, incident reporting, and safety warnings are relevant to Plaintiffs' allegations that Plaintiff Patricia Staggs was "caused to trip and fall in a hole located directly in front of the front doors of the Defendant(s)' premises." (Docket No. 1-1 at ¶ 7.) However, the Court echoes the *Beach* court's "concerns" over the "general breadth" of the request at issue, and has, therefore, narrowed the request to be more proportional to the needs of the case.

Panda Express must supplement its written response to Plaintiffs' Request for Production No. 11, as revised by the Court above. Panda Express must then produce all responsive, non-privileged documents.

**4. <u>Plaintiffs' Responses to Panda Express's Interrogatories and Requests for Production</u>**

The parties dispute whether Plaintiffs have appropriately responded to several of Panda Express's discovery requests. The parties more clearly set forth the issues and requests at issue, so the Court is able to resolve some of these disputes.

**i. Litigation Funding (Int. No. 16, RFP No. 17)**

The parties dispute whether Plaintiffs are required to produce information related to "litigation funding," which was requested in Panda Express's Interrogatory No. 16 and Request

18

for Production No. 17. Plaintiffs objected because the requests sought information "not reasonably calculated to lead to the discovery of admissible evidence" and because the information was "irrelevant in light of the collateral source rule." (Docket No. 44-8 at 8–9; Docket No. 44-9 at 4.)

In support of these requests, Panda Express states that "[f]ederal courts have determined … that litigation funding is discoverable under Rule 26." (Docket No. 44-1 at 19.) It cites generally to two cases to support this contention: (1) *Combs v. Bridgestone Ams., Inc.*, No. 2:22-CV-00130, 2023 WL 9530592 (E.D. Ky. Nov. 27, 2023); and (2) *Massey v. Dollar Tree Stores, Inc.*, No. 1:18-cv-156, 2019 WL 2717978 (E.D. Tenn. Jun. 28, 2019). Panda Express does not analyze these cases or offer any other reasons to demonstrate to the Court why litigation funding information is relevant.

In response, Plaintiffs broadly assert that information related to litigation funding is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence, though they do not provide much reasoning. (*Id.* at 17–18.) Plaintiffs also assert that the two cases cited by Panda Express are inapplicable to this matter. Plaintiffs discuss *Combs* and argue that the holding in that case was made in the context of a medical funding company's assertion of subrogation in an intervenor complaint. (*Id.*) Plaintiffs do not discuss *Massey*.

The Court agrees with Plaintiffs that neither of the cases cited by Panda Express are particularly helpful. As an initial matter, "the fact that a particular case found a funding agreement relevant and discoverable is the beginning and not the end of analysis. Since what might make a species of documents relevant in one case does not necessarily make it relevant in all others, it is 'inappropriate for courts to be guided by past judicial evaluations of the relevance of seemingly similar evidence.'" *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F.Supp.3d 711, 722 (N.D. Ill. 2014) (quoting 1A Wigmore on Evidence, § 37.3 at 1040 (Tillers Rev. 1983)). In *Combs*, the party

seeking the litigation funding information asserted that this funding was being used to "bolster" and "inflate" the plaintiff's wage loss claim. 2023 WL 9530592 at *7. The court found that the information was discoverable based on these allegations. *Id.* at *7–8. There are no similar allegations in this case. In *Massey*, the Court found that "whether the medical care Plaintiff allegedly received as a result of the fall at issue is provided on a lien basis pursuant to an agreement involving a litigation funding company" was "appropriately discoverable in this case" for the reasons that court had detailed in an earlier hearing. 2019 WL 2717978 at *1. Without more information about why the court found litigation funding to be "appropriately discoverable," the Court does not find *Massey* persuasive or particularly helpful.

Panda Express has failed to establish that discovery of litigation funding documents is "relevant to any party's claims or defense." Fed. R. Civ. P. 26(b)(1). "Whether plaintiff is funding this litigation through savings, insurance proceeds, a kickstarter campaign, or contributions from the union is not relevant to any claim or defense at issue." *Yousefi v. Delta Elec. Motors, Inc.*, No. 13-CV-1632, 2015 WL 11217257, at *2 (W.D. Wash. May 11, 2015). *See also Benitez v. Lopez*, No. 17-CV-3827, 2019 WL 1578167, at *1–2 (E.D.N.Y. Mar. 14, 2019) (denying motion to compel plaintiff to produce litigation funding information because such information was irrelevant to plaintiff's credibility, the merits of plaintiff's claims, or plaintiff's motivation to file the lawsuit). Here, the Court sees no reason – nor has Panda Express provided the Court with any reason – why the matter of how Plaintiffs are funding this litigation is relevant.  Accordingly, the Court **STRIKES PANDA EXPRESS'S INTERROGATORY NO. 16**.

### ii.  Photographs (RFP No. 10)

Plaintiffs agreed to supplement their document production in response to Panda Express's Request for Production No. 10, which requests certain "photographs, videos, maps, diagrams, or

other pictorial representations." (Docket No. 44-9 at 3.) Panda Express contends that this supplemental production has not yet occurred. Accordingly, **PLAINTIFFS ARE ORDERED TO SUPPLEMENT THEIR DOCUMENT PRODUCTION IN RESPONSE TO PANDA EXPRESS'S REQUEST FOR PRODUCTION NO. 10**, to the extent they have not done so already.

### iii. Medical Bills (RFPs Nos. 1, 2)

The parties dispute whether Plaintiffs should produce medical records and bills that are not redacted. This issue centers around two of Panda Express's requests for production to Plaintiff Patricia Staggs: No. 1, which seeks all documents relied upon in responding to interrogatories, and No. 2, which seeks "medical documents, records, hospital records, reports, diagnostic images, bills, and any other medical data for medical treatment" referenced in the complaint. (Docket No. 44-9 at 1.) In response, Plaintiff Patricia Staggs referred Panda Express to attached documents. (*Id.*) She did not object.

Panda Express states that it does not know what information is redacted (Docket No. 44-1 at 20) and assumes that the redacted information concerns "insurance information" (*id.* at 19). Panda Express argues that, although the information may not be admissible at trial, it is therefore nevertheless discoverable. Panda Express states, "Mrs. Staggs is of age to receive Medicare, and the Medicare Secondary Payer Act requires all parties in this litigation to protect its interest. Panda Express cannot protect an interest it does not know about and cannot discover." (*Id.* at 20.) Panda Express does not provide any applicable legal authority.

In response, Plaintiffs argues that Panda Express seeks unredacted copies of medical bills. (*Id.* at 16.) Plaintiffs do not explicitly state what type of information is redacted and do not address Panda Express's contention that portions of medical records were also redacted. Plaintiffs argue

that Panda Express wants this information to "value" Plaintiffs' claims, but a valuation "is not dependent on what medical bills have been paid, or by whom." (*Id.* at 17.) Plaintiffs also argue that the collateral source rule further supports their position that medical bills should not be produced because a plaintiff in a tort case can recover all damages incurred from the defendant, whether or not they were paid by an insurer. (*Id.*) (citing *Dedmon v. Steelman*, 535 S.W. 3d 431, 442–43 (Tenn. 2016); *Fye v. Kennedy*, 991 S.W. 2d 754 (Tenn. Ct. App. 1998)).)

The Court is not certain of the category of information that Plaintiffs have redacted or what documents have been redacted (i.e., medical bills, medical records, both), and therefore cannot make a decision about whether such redactions are proper. Accordingly, the parties are ordered to **MEET AND CONFER IN PERSON TO DISCUSS THIS ISSUE**. During this meet and confer, the parties must discuss the following: (1) what categories of information have been redacted from the documents at issue; (2) the reasons why Panda Express thinks the information should be produced, including which applicable authority supports Panda Express's position; (3) the reasons why Plaintiffs think that information should not be produced, including which applicable authority supports Plaintiffs' position; and (4) whether the parties can come to a resolution over what information is redacted or not redacted. If the parties are not able to resolve all of their disputes, they must prepare and file a supplemental joint discovery dispute statement that clearly sets forth the following: (1) what types of documents contain redactions (i.e., medical bills, medical records, both); (2) what categories of information have been redacted from the documents at issue; (3) the reasons why Panda Express thinks the information should be produced, including which applicable authority supports Panda Express's position; and (4) the reasons why Plaintiffs think that information should not be produced, including which applicable authority

supports Plaintiffs' position. The supplemental joint discovery dispute statement must also be accompanied by a separately filed joint motion for discovery conference.

## IV. CONCLUSION

As set forth above, the parties' joint motion for discovery conference (Docket No. 44) is **DENIED** and the Court **ORDERS** as follows:

1.     **<u>LEAD COUNSEL</u> FOR THE PARTIES MUST MEET AND CONFER <u>IN PERSON</u> BY NO LATER THAN OCTOBER 22, 2024** to discuss the discovery issues identified and discussed above. These issue include but are not limited to: (i) Plaintiffs' Rule 30(b)(6) deposition topics, including which topics are at issue; (ii) Panda Express's responses to Plaintiffs' interrogatories and requests for production, including which requests are at issue and what the "area of the incident at issue in this lawsuit" means; and (iii) Plaintiffs' responses to Panda Express's Requests for Production Nos. 1 and 2.[12]

2.     If the parties are not able to resolve all of the discovery issues identified above after they meet and confer in person, the parties must prepare file a supplemental joint discovery dispute statement **BY NO LATER THAN OCTOBER 25, 2024**. The statement must clearly identify which issues remain in dispute. The statement may be no more than 3 pages per affected party per issue. In the statement, the parties must clearly set forth which issues remain; identify and describe the specific discovery request(s) in dispute; and detail their respective position with **<u>supporting facts and legal authorities</u>**, including as to any proportionality considerations.[13] The joint

---

[12] The Court lists these issues to assist the parties. However, the parties should not rely on this list, but rather must carefully review the entirety of the Court's order to ensure that they address all remaining issues during their meet and confer.

[13] This means that the parties must endeavor to find applicable case law or other legal authority that supports their positions on why information is or is not discoverable under Rule 26.

discovery dispute statement must certify that lead counsel for all parties conducted the required in-person meeting and made a good faith effort to resolve each discovery dispute presented in the statement.

3.     Panda Express must supplement its written response to Plaintiffs' Request for Production No. 11, as revised by the Court above, **BY NO LATER THAN OCTOBER 18, 2024**. Panda Express must then produce all responsive, non-privileged document **BY NO LATER THAN OCTOBER 18, 2024**.

4.     Panda Express's Interrogatory No. 16 is stricken.

5.     Plaintiffs are ordered to supplement their document production in response to Panda Express's Request for Production No. 10, **BY NO LATER THAN OCTOBER 18, 2024**, to the extent they have not done so already.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge

24